Thomas and Sandra ALONSO; James and Judy Scott; and Edward and Diane Bragiel, Individually and on Behalf of All Others Similarly Situated, Appellants–Plaintiffs,

v.

CITY OF HAMMOND and Sanitary District of the City of Hammond, Appellees–Defendants.

No. 64A03–9406–CV–225.

Court of Appeals of Indiana, Third District.

April 6, 1995.

Rehearing Denied Aug. 4, 1995.

Saul I. Ruman, William H. Tobin, Jennifer Kalas, Ruman, Clements, Tobin & Holub, P.C., Hammond, for appellant.

Joseph Stalmack, Stephen D. Bannwart, Galvin, Stalmack & Associates, Joseph Allegretti, Sherman & Allegretti, Hammond, for appellee.

## OPINION

GARRARD, Judge.

Thomas and Sandra Alonso, et al. (collectively "Alonso") contend that the trial court erred by (1) denying their motion to certify a class action, and by (2) entering judgment for defendants City of Hammond and Sanitary District (Hammond) on the claim of inverse condemnation. This court granted Alonso's petition for interlocutory appeal on July 27, 1994.

### FACTS

On May 25, 1991, rainwater and sewage backed up in basements of certain residential and business property in Hammond, Indiana. On November 7, 1991, Alonso filed a proposed class action complaint sounding in negligence, nuisance, trespass, strict liability, and claims of unconstitutional taking of property. Alonso's complaint, which was filed individually and on behalf of all others similarly situated, claimed that between 800 and 900 property owners in Hammond had been affected.

After a hearing, the trial court entered an order denying class certification and dismissing the plaintiffs' claim for inverse condemnation. The court's order did not include specific findings of fact and conclusions of law. This interlocutory appeal followed.

### ISSUES

I.  Whether a class representative can satisfy the notice requirement of Indiana's Tort Claims Act on behalf of all potential class plaintiffs without their authorization.

II. Whether the trial court erred by dismissing Alonso's claim for inverse condemnation.

### DISCUSSION AND DECISION

ISSUE ONE.

Neither party disputes that the present action is subject to the provisions of the Tort Claims Act, I.C. § 34-4-16.5-1 et seq. As a procedural precedent to bringing suit against Hammond, the Act required Alonso to give Hammond written notice of his claim within 180 days after the alleged loss. I.C. § 34-4-16.5-7 (West 1994 Supp.). The Act further provided that the notice must contain a number of details concerning the loss, including the circumstances which brought about the loss, the names of those involved if known, the extent of the loss, the time and place of the loss, the amount of damages sought and the residence of the person making the claim at the time of the loss and at the time of filing the notice. I.C. § 34-4-16.5-9.

Alonso relies upon two notices given to the appropriate parties by the attorney for the proposed class, Saul I. Ruman. These notices contained names and addresses for 60 class plaintiffs and stated they were being submitted on behalf of all similarly situated property holders and residents of Hammond not otherwise specifically named. The notices also estimated that between 800 and 900 homes and businesses had been affected. Record at 136–144 and 148–155. Cases interpreting the Tort Claims Act are clear that notice given by a claimant's attorney or agent is sufficient. Rosga v. City of Hammond (1985), 493 N.E.2d 787, 788, reh. denied, trans. denied; City of Gary v. Russell (1953), 123 Ind.App. 609, 112 N.E.2d 872. Thus, the question before us is whether a class representative can satisfy the notice requirement for potential class plaintiffs who have not authorized the representative to provide notice on their behalf.

A notice that substantially complies with the requirements of the Act will be deemed sufficient. Collier v. Prater (1989), Ind., 544 N.E.2d 497, 499. What constitutes substantial compliance is a question of law. Our Supreme Court has stated:

> In general, a notice that is filed within the 180 day period, informs the municipality of the *claimant's intent to make a claim* and contains sufficient information which reasonably affords the municipality an opportunity to promptly investigate the claim satisfies the purpose of the statute and will be held to substantially comply with it.

*Id.* (emphasis added).

After examining the cases, we are of the opinion that the names and number of

claimants listed in the notice are essential information. The passage quoted above includes knowledge of a claimant's intent to make a claim against the municipality as information needed for substantial compliance. Moreover, this court has found the names and number of claimants to be key items of information, noting that until the complaint is filed, the public body would not know that an unnamed claimant existed, or if it did, that the person contemplated filing a claim. *Putnam County v. Caldwell* (1987), Ind.App., 505 N.E.2d 85, 87, *reh. denied* (holding that wife could not rely upon tort claim notice filed by her husband, but rather was required to file her own notice of claim for loss of consortium). *See also Mills v. American Playground Device Co.* (1980), Ind.App., 405 N.E.2d 621, *reh. denied* (stating that the key information necessary to an investigation is the nature of the incident, the place of the injury, and *the party injured*) (emphasis added).

Perhaps the most helpful case to our analysis is *Rosga v. City of Hammond* (1985), Ind.App., 493 N.E.2d 787, *trans. denied*. *Rosga* involved a claim for personal injuries and wrongful death arising out of an automobile collision. A notice concerning the accident in which Rosga was injured and her husband was killed was timely served on the City of Hammond. The notice was signed by an attorney who represented the estates of three other people killed in the collision. The caption of the notice recited that it concerned the claims of those three, "and all persons similarly situated, injured or killed" in the accident. In fact, the notice included the Rosga names, but did not purport to advance a claim on their behalf. *Id.* at 788. We held that Rosga could not rely upon the notice given by another party for that party's claim, even though her claim arose out of the same occurrence. In doing so, we stated that the city was entitled to know that a party was making a claim against it.[1] *Id.* at 789.

Although *Rosga* did not involve a potential class action, one of the purposes underlying the notice requirement is still to inform the municipality that a party is making a claim against it.[2] To hold that a notice on behalf of a class containing approximately 800 unnamed potential plaintiffs serves that purpose would be akin to allowing claimants to rely upon actual notice of the incident to avoid the necessity of giving the statutory notice. Claims that actual notice of the incident will suffice as substantial compliance with the statute have been uniformly rejected by this court. *Board of Aviation Commr's. of St. Joseph County v. Hestor* (1985), Ind.App., 473 N.E.2d 151; *Batchelder v. Haxby* (1975), 167 Ind.App. 82, 337 N.E.2d 887. *See also Hasty v. Floyd Memorial Hosp.* (1992), Ind.App., 612 N.E.2d 119, 123 (holding that contact with defendant's insurance carrier is insufficient to establish proper notice under the Tort Claims Act).

We conclude that no notice was given by the potential class plaintiffs who either did not submit their own notices or who failed to authorize Alonso's attorney to submit a notice on their behalf. Therefore, an action against Hammond by these potential plaintiffs is precluded.

Our holding today does not mean that class actions cannot be instigated against municipalities. Instead, we hold that the notice requirement of the Tort Claims Act, which is a prerequisite to bringing a claim against a political subdivision, applies to all claims brought against a political subdivision, whether those claims are subsequently brought individually or as a class action. As this court has stated previously, the clear legislative intent of the Tort Claims Act is to set up a uniform body of law to govern the

---

1. Our supreme court later recognized that the purpose of requiring a claimant to announce his intention to assert a claim is an objective of the statutory notice requirement. *Indiana State Highway Com'n. v. Morris* (1988), Ind., 528 N.E.2d 468, 471. Substantial compliance with the notice requirement is sufficient when the purpose of the notice requirement is met.

2. Purposes of tort claim notice requirement include requiring claimant to announce his intention to assert a claim, as well as informing officials of political subdivision with reasonable certainty of accident and surrounding circumstances to enable it to investigate, determine its possible liability and prepare a defense to the claim. *Indiana State Highway Com'n. v. Morris* (1988), Ind., 528 N.E.2d 468, 471.

prosecution of tort claims against the State and other governmental entities. *Id.* at 121; *Gonser v. Board of Commissioners for Owen County* (1978), 177 Ind.App. 74, 378 N.E.2d 425. Thus, all potential class plaintiffs must satisfy the notice requirement of the Tort Claims Act, either by submitting their own notices of claims or by authorizing someone to submit a notice for them.[3]

Because the trial court failed to submit findings of fact and conclusions of law, we remand for a determination as to which potential plaintiffs listed in Alonso's notices authorized attorney Ruman to file a notice on their behalf. Once the trial court has determined which plaintiffs have submitted the requisite notices, then it must either certify the class or enter specific findings as to why certification would be improper. *ConAgra, Inc. v. Farrington* (1994), Ind.App., 635 N.E.2d 1137, *reh. denied; Kuespert v. State* (1978), 177 Ind.App. 142, 378 N.E.2d 888.

ISSUE TWO.

Alonso also claimed that Hammond's act or omission in allowing water and sewage to back up into his basement constituted a taking of private property for public use without just compensation, thus violating the Fifth and Fourteenth Amendments to the United States Constitution and Article I § 21 of the Indiana Constitution. Alonso argues that the trial court erred by dismissing plaintiffs' inverse condemnation claim because plaintiffs properly alleged intent, or at least foreknowledge of results substantially to occur, a public benefit, and a temporary taking.

■ A judgment on the pleadings under Indiana Trial Rule 12(C) is proper only when there are no genuine issues of material fact. *Craven v. State Farm Mutual Automobile Ins. Co.* (1992), Ind.App., 588 N.E.2d 1294, 1296, *reh. denied; Davidson v. Cincinnati Ins. Co.* (1991), Ind.App., 572 N.E.2d 502, 505, *trans. denied.* For purposes of review, the movant is deemed to admit all the well-pleaded facts in favor of the non-movant, and we will draw all reasonable inferences in favor of the non-movant. *Craven,* 588 N.E.2d at 1296.

■ Even taking all of Alonso's pleaded facts as true, we find that Hammond was entitled to judgment as a matter of law. Alonso's complaint indicates that on one occasion he experienced a temporary back up of rainwater and sewage in his basement. Alonso has not indicated how long the back up lasted. Proof that Hammond's negligence caused sewage to back up temporarily into Alonso's basement on one occasion is insufficient to establish a taking in the constitutional sense. *Cf. Rodman v. City of Wabash* (1986), Ind.App., 497 N.E.2d 234, *reh. denied, trans. denied* (holding that six occurrences of sewage backing up into plaintiffs' basement over three year period did not amount to taking); and *City of Fort Smith v. Anderson* (1967), 241 Ark. 824, 410 S.W.2d 597 (reversing jury award resulting from a single sewage overflow into the landowner's home).

Alonso relies heavily upon *Robinson v. City of Ashdown* (1990), 301 Ark. 226, 783 S.W.2d 53, in support of his inverse condemnation claim. However, *Robinson* held that repeated instances of sewage back up due to negligence, sustained over a long period of time, could amount to inverse condemnation. In their complaint, the Robinsons alleged a taking of their property which condemned and destroyed *all reasonable value of the property. Id.* 783 S.W.2d at 55 (emphasis added). *Robinson* is factually distinguishable from the case at bar.

Alonso also relies upon *First English Evangelical Lutheran Church v. County of Los Angeles,* 482 U.S. 304, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987), for the position that temporary takings which deprive landowners of the use of their property are compensable. Once again, a careful reading of this case does not support Alonso's claim. The county of Los Angeles adopted a flood protection ordinance that forbade plaintiffs from re-

---

3. Should we allow a class representative to satisfy the notice requirement without prior authorization by the potential plaintiffs, we would in effect be saying that because a municipality injured a large number of people rather than just a few, the Tort Claims Act no longer provides it the same protection. We find no indication that the legislature so intended. Indeed, should class certification be denied, claims by those potential plaintiffs relying upon the class representative's notice would be barred.

building on their land after a devastating flood. The ordinance was in effect from at least January, 1979 until October, 1985. *Id.* at 319, 107 S.Ct. at 2388. The court held that where the government's activities had already worked a taking of all use of property, no subsequent action could relieve the government of its duty to provide compensation for the duration of the taking. *Id.* at 321, 107 S.Ct. at 2389. The court assumed that the ordinance denied plaintiff *all use of its property for a considerable period of years,* and limited its holding to the facts presented. *Id.* at 321–322, 107 S.Ct. at 2389–2390 (emphasis added). Again, Alonso's case is factually distinguishable.

Moreover, Hammond was entitled to judgment on the pleadings for another reason. Assuming Alonso succeeded in establishing a taking, he failed to allege that the taking was for the public use.[4] Thus, the trial court correctly dismissed the claim for inverse condemnation.

## CONCLUSION

This case is remanded for determinations as to (1) which potential plaintiffs listed in Alonso's notices authorized attorney Ruman to file a notice on their behalf, and (2) whether certification of the remaining potential plaintiffs as a class would be proper. Judgment as to plaintiffs' inverse condemnation claim is affirmed.

HOFFMAN and BAKER, JJ., concur.

---

4. Merely alleging a violation of the relevant provisions of the U.S. Constitution and the Indiana Constitution is not sufficient to withstand judgment on the pleadings.