Cite as 2025 Ark. App. 308

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-24-331

|  |  |
|---|---|
|  | Opinion Delivered May 14, 2025 |
| CLAYTON FRANKLIN AS ADMINSTRATOR FOR THE ESTATE OF CODY J. FRANKLIN<br><br>APPELLANT<br><br>V.<br><br><br><br>CITY OF OZARK, ARKANSAS; NATHAN GRIFFITH; AND JOSEPH GRIFFITH<br><br>APPELLEES | APPEAL FROM THE CRAWFORD COUNTY CIRCUIT COURT [NO. 17CV-21-215]<br><br>HONORABLE MARC MCCUNE, JUDGE<br><br><br><br>AFFIRMED |

## KENNETH S. HIXSON, Judge

Appellant Clayton Franklin, as the administrator of his son's estate, brought a wrongful-death claim against the City of Ozark, Arkansas; Officer Nathan Griffith; and Sergeant Joseph Griffith after his son, Cody Franklin, died while being detained in the Franklin County Sheriff's Office Detention Center.  Appellant appeals after the Crawford County Circuit Court filed two separate orders granting appellees' motion for summary judgment and granting appellees' motion to dismiss appellant's second amended complaint. On appeal, appellant argues that the circuit court erred in granting appellees' motions because (1) the statute of limitations does not bar his wrongful-death claim, and (2) appellees are not immune to his wrongful death claim.  We affirm.

I. *Relevant Facts*

The case before us originally started in federal court. On February 10, 2017, appellant filed an amended complaint in the United States Federal District Court for the Western District of Arkansas against Franklin County Arkansas; City of Ozark, Arkansas; Franklin County Sheriff's Department, Anthony Boen, in his official capacity as Franklin County sheriff; Nicholas James, individually and in his capacity as a Franklin County sheriff's deputy; Nathan Griffith; Joseph Griffith; and James Taylor Molton. In pertinent part, appellant asserted claims under 42 U.S.C. § 1983 for excessive force and claims under state law for battery and wrongful death. The district court granted partial summary judgment and dismissed with prejudice all claims against the municipalities and all but two of the officers. *Franklin v. Franklin Cnty., Ark.*, No. 2:17-CV-2016, 2019 WL 1757533, at *10 (W.D. Ark. Apr. 19, 2019). The district court denied summary judgment as to Officer Nathan Griffith and Sergeant Joseph Griffith and found that Officer Griffith and Sergeant Griffith were not entitled to qualified immunity as to appellant's federal and state claims. An interlocutory appeal was taken to the Eighth Circuit Court of Appeals. *Franklin v. Franklin Cnty., Ark.*, 956 F.3d 1060 (8th Cir. 2020).

The Eighth Circuit held that appellant's amended complaint stemmed from the following events that occurred on May 10–11, 2016:

> The sheriff's office in Franklin County, Arkansas, received a call one evening that a suspicious person, later identified as [Cody] Franklin, was walking along a road and in driveways acting bizarrely and "swinging a stick like a sword." A sheriff's deputy found Franklin and spoke with him, and when Franklin made inconsistent statements about his criminal history and his reasons for being in a ditch, the deputy

2

arrested him and took him to the county jail. Franklin called his girlfriend and explained that, if he were held there overnight, it would "take them three [f . . .ing] dart guns, at least" to control him.

A few hours later, Deputy Nicholas James decided to move Franklin from the general population pod to an isolation cell because Franklin was fighting with inmates and appeared to be under the influence of drugs. An impasse ensued when James opened the door to the pod and asked Franklin to go with him. Franklin refused, dropped into a combative stance, and challenged James, who declined the invitation to fight. Franklin then proceeded to throw things at James and tried to pull him into the cell. Officer Nathan Griffith of the Ozark Police Department, who had arrived to help move Franklin, wrestled Franklin to the floor after a struggle, but Franklin kicked Griffith off and stood up. When Griffith shot Franklin with his taser, Franklin fell to the floor again. Despite commands to the contrary, Franklin began to stand, so Griffith tased him yet another time. It is possible that Griffith may have tased Franklin three more times, but even if he did it had no effect on Franklin. When Franklin started toward them again, the officers finally managed to get Franklin to the ground, handcuff him, and move him to the isolation cell.

Around this time, Sergeant Joseph Griffith of the Ozark Police Department arrived to assist James and Nathan (since two Griffiths are involved now, we will refer to them individually by their first names to avoid confusion and together as "the Griffiths"). The officers tried to remove Franklin's handcuffs: With Franklin lying face down on the ground, the three officers used their weight to subdue him, but he continued to struggle, so Joseph warned Franklin that he would use the taser if Franklin kept resisting. Because Franklin continued to resist, Joseph tased him on drive-stun mode two or three more times until Franklin stopped fighting and relaxed his arms, allowing the officers to remove his handcuffs. After a few minutes, the officers called for an ambulance, and Franklin was transported to a local hospital. He was pronounced dead a short time later. The medical examiner opined that the cause of death was "methamphetamine intoxication, exertion, struggle, restraint, and multiple electro muscular disruption device applications."

*Franklin*, 956 F.3d at 1061.

From these allegations, the Eighth Circuit determined that Officer Griffith and Sergeant Griffith acted reasonably under the circumstances and did not violate Cody Franklin's right to be free from excessive force even if they "tased" him up to eight times.

3

The Eighth Circuit therefore held that Officer Griffith and Sergeant Griffith were entitled to qualified immunity on the § 1983 excessive-force claims because their actions did not violate the constitution. However, it "remanded the state claims to the district court for further proceedings, including a determination whether to exercise supplemental jurisdiction over those claims." *Franklin*, 956 F.3d at 1063. It is undisputed that on remand, the district court declined to exercise jurisdiction and dismissed the state claims without prejudice on May 28, 2020.

Appellant filed his original complaint in the present action against the City of Ozark, Officer Griffith, and Sergeant Griffith in the Crawford County Circuit Cout on May 26, 2021, and an amended and substituted complaint on July 12, 2021. In pertinent part, appellant's amended complaint alleged that appellees' "willful and wanton negligence" was the proximate cause of Cody Franklin's suffering and death. Appellant alternatively alleged that the "individual defendants acts and omissions, constitute[d] gross or simple negligence."

Appellees thereafter filed a motion for summary judgment on August 12, 2021, and a motion to dismiss on August 13, 2021. Both motions alleged that the negligence claims were barred by the statute of limitations and that appellees are entitled to statutory immunity from suit under Arkansas Code Annotated section 21-9-301 (Repl. 2022). Appellees attached an affidavit from the mayor of the City of Ozark, Roxie Hall, as proof that the City did not have any insurance policies that would have provided coverage for the incident that occurred on May 10, 2016.

Appellant filed a second amended and substituted complaint on August 27, 2021. In his second amended complaint, appellant alleged that his claims were timely filed because he was permitted to refile his claims in accordance with the Arkansas savings statute after the federal court dismissed his state claims without prejudice. Appellant further removed his references to "negligence" and instead alleged the following causes of action:

COUNT ONE: WRONGFUL DEATH & SURVIVAL

. . . .

31. Plaintiff alleges that the above-named individual Defendants, Nathan Griffith and Joseph. Griffith, jointly and/or severally, caused Cody Franklin's death,

(A) By using excessive and deadly force in the course of restraining the Decedent, in willful violation of the duty of care that the individual defendants owed. The defendants failed to observe even slight care, evincing a conscious failure to perform a manifest duty in reckless disregard of natural or probable consequences to the life of another. Decedent was unlawfully shocked, beaten, suffocated and killed from a use of force that was clearly excessive to the need, and known as dangerously excessive by officer's whose training and experience made them knowledgeable of the impact of tasers in conjunction with the other physical force and restraint they employed against Cody Franklin;

([B]) By failing to provide medical attention, where it was clearly necessary and required by law; Decedent's body remained on the cement floor of the jail after officers knew that he was in distress.

32. Defendants' *willful and wanton tortious conduct* as described hereinabove was the proximate cause of Cody's suffering and death.

3[3]. The individual defendants herein are jointly and severally liable for damages under the Arkansas Wrongful Death statute, A.C.A. § 16-62-102.

3[4]. The individual defendants herein are jointly and severally liable under the Arkansas Survival Action statute, A.C.A. § 16-62-101 and for all damages cognizable thereunder[.]

5

COUNT TWO - RESPONDEAT SUPERIOR

36. Nathan Griffith and Joseph Griffith were acting within the scope of their employment for the City of Ozark. As such, said City of Ozark is responsible for the conduct of the officers under the doctrine of respondeat superior due to the master-servant relationship which existed at the time of the incident forming the basis of this lawsuit.

(Emphasis added.)

Appellees filed their answer to the second amended complaint on September 16, 2021. Appellees generally denied the allegations and alleged multiple affirmative defenses, including that the claims were filed outside the statute of limitations and appellees were entitled to statutory and qualified immunity.

On September 16, 2021, appellees filed their second motion to dismiss pursuant to Rule 12(b)(6) of the Arkansas Rules of Civil Procedure. Appellees argued that appellant could not maintain an action for wrongful death as a result of "willful and wanton" misconduct because such a cause of action was not pled and was dismissed without prejudice in the federal litigation, and the statute of limitations prevents appellant from bringing such a claim more than three years after Cody Franklin's death. Appellees alternatively argued that even if the claim for willful and wanton misconduct was properly pled and dismissed from the federal litigation, "willful and wanton" conduct is a term of art that accompanies negligence claims; therefore, appellees have immunity from such negligence claims under Arkansas Code Annotated section 21-9-301.

Appellant disagreed and filed his response on October 7, 2021. He argued that he adequately pled a cause of action for wrongful death caused by the appellees' willful and

6

wanton misconduct. He claimed that the tort that was alleged in this case was also alleged in the prior federal lawsuit in which the wrongful-death claim was dismissed without prejudice on May 28, 2020, and refiled in this court within the one year allowed by the Arkansas savings statute. Appellant additionally argued that his wrongful-death claim was not barred by statutory immunity because the statute does not apply to the kind of willful and wanton misconduct alleged in his second amended complaint.

Appellant attached a copy of his amended complaint that was filed in federal court to his response to the second motion to dismiss. According to his federal complaint, appellant alleged the following state claims:

## COUNT 4 - BATTERY AND WRONGFULT DEATH CLAIM AGAINST ALL DEFENDANTS UNDER ARKANSAS LAW

42. The Plaintiff hereby incorporates all previously pled paragraphs herein as if set forth word for word.

43. The Defendants committed an assault upon Cody when they intentionally, knowingly, and/or recklessly caused Cody to be suffocated, beaten and shocked. The assault conduct was committed intentionally, knowingly, and/or recklessly, and was the proximate cause of physical and emotional injuries to Cody. Said injuries and death were the direct and immediate consequence of the officers' wrongful acts and a natural and direct result of the battery.

44. At no time were the officers privileged to take the action, as lethal force was not necessary under the circumstances.

## COUNT 5 - RESPONDENT SUPERIOR

45. Nicholas James and James Taylor Molton were acting within the scope of their employment as an agent for Franklin County while Nathan Griffith and Joseph Griffith were acting within the scope of their employment for the City of Ozark. As such, said City and County Defendants are responsible for the conduct of the officers

7

under the doctrine of respondent superior due to the master-servant relationship which existed at the time of the incident forming the basis of this lawsuit.

On February 7, 2024, the circuit court filed two separate orders issuing blanket rulings that it was granting appellees' motion for summary judgment and granting appellees' motion to dismiss the second amended complaint. It is from these orders that appellant has filed his appeal.

## II. *Standard of Review*

In this case, the circuit court granted both a motion for summary judgment and a motion to dismiss filed pursuant to Rule 12(b)(6) of the Arkansas Rules of Civil Procedure on the same basis. Because the circuit court considered matters outside the pleadings, the motion to dismiss was converted to a motion for summary judgment. *Barrows/Thompson, LLC v. HB Ven II, LP*, 2020 Ark. App. 208, 599 S.W.3d 637. Therefore, our summary-judgment standard of review applies to both orders. Summary judgment may be granted only when there are no genuine issues of material fact to be litigated, and the moving party is entitled to judgment as a matter of law. *Greenlee v. J.B. Hunt Transp. Servs.*, 2009 Ark. 506, 342 S.W.3d 274. The burden of sustaining a motion for summary judgment is always the responsibility of the moving party. *McGrew v. Farm Bureau Mut. Ins. Co. of Ark.*, 371 Ark. 567, 268 S.W.3d 890 (2007). Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Greenlee, supra.* However, if a moving party fails to offer proof on a controverted issue, summary judgment is not appropriate,

regardless of whether the nonmoving party presents the court with any countervailing evidence. *Moses v. Bridgeman*, 355 Ark. 460, 139 S.W.3d 503 (2003). On appellate review, this court determines if summary judgment was appropriate by deciding whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Greenlee*, *supra*. We view the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* Our review focuses not only on the pleadings but also on the affidavits and other documents filed by the parties. *Id.*

Our appellate courts have held that whether a party is immune from suit is purely a question of law and is reviewed de novo. *Dayong Yang v. City of Little Rock*, 2019 Ark. 169, 575 S.W.3d 394; *Repking v. Lokey*, 2010 Ark. 356, 377 S.W.3d 211; *City of McCrory v. Wilson*, 2022 Ark. App. 200, 644 S.W.3d 823.

## III. *Statutory Immunity*

In issuing a blanket ruling, as the circuit court did here, a circuit court is deemed to have accepted all arguments advanced by the prevailing party. *Corbitt v. Ark. Game & Fish Comm'n*, 2023 Ark. 61. The circuit court therefore accepted appellees' arguments that the second amended complaint should be dismissed because the statute of limitations barred appellant's claims and because appellees were entitled to statutory immunity under Arkansas Code Annotated section 21-9-301. We agree that appellees were entitled to statutory immunity under the claims as alleged in the second amended complaint and must affirm; therefore, we do not address the statute-of-limitations argument.

9

Statutory immunity is set out in Arkansas Code Annotated section 21-9-301, which provides the following:

(a) It is declared to be the public policy of the State of Arkansas that all counties, municipal corporations, school districts, public charter schools, special improvement districts, law enforcement agencies for and certified law enforcement officers employed by a public or private institution of higher education, and all other political subdivisions of the state and any of their boards, commissions, agencies, authorities, or other governing bodies shall be immune from liability and from suit for damages except to the extent that they may be covered by liability insurance.

(b) No tort action shall lie against any such political subdivision because of the acts of its agents and employees.

The supreme court has consistently held that section 21-9-301 provides immunity from civil liability for negligent acts but not for intentional acts. *City of Fayetteville v. Romine*, 373 Ark. 318, 284 S.W.3d 10 (2008); *Williams v. Pate*, 2015 Ark. App. 327, 463 S.W.3d 734. Whether the acts were malicious is irrelevant to the analysis. *See City of Fayetteville*, *supra*. Moreover, the degree of negligence is also not at issue. In *Sledge v. City of Pine Bluff ex rel. Washington*, 2022 Ark. App. 23, at 7, we affirmed a circuit court's finding that the City of Pine Bluff and other city officials were entitled to immunity under section 21-9-301 because Sledge "did not allege any intentional acts by the appellees, only gross negligence and reckless indifference."

As in *Sledge*, we agree with appellees that appellant's second amended complaint does not contain any specific allegations of *intentional acts* to satisfy the exception to section 21-9-301. Appellant nevertheless explains on appeal that his references to "negligence" that were contained in prior versions of his complaint were removed and argues that his allegation that appellees' "willful and wanton tortious conduct . . . was the proximate cause of Cody's

10

suffering and death" was sufficient. Appellees disagree and argue that appellant's allegations still sound in negligence and not an intentional tort.

A review of our appellate cases indicates that we have equated the term of art "willful and wanton misconduct" to a degree of negligence and not an intentional tort as argued by appellant. *See St. Louis Sw. Ry. Co. v. Clemons*, 242 Ark. 707, 709, 415 S.W.2d 332, 333 (1967) (stating that "willful and wanton misconduct is, as a matter of law, higher in degree than gross negligence" and also described "willful and wanton disregard" as a degree of negligence); *Harkrider v. Cox*, 232 Ark. 165, 169, 334 S.W.2d 875, 877 (1960) (stating that "willful and wanton disregard or misconduct" is not entirely distinct and apart from negligence but notes that previous supreme court opinions use the terms "willful and wanton negligence" and "willful and wanton disregard" as synonymous in meaning).

Although not an immunity case, the supreme court has specifically rejected an argument that allegations of willful and wanton conduct were enough to constitute an intentional tort for purposes of the exclusivity provision of the workers' compensation act and allow an injured employee to pursue a common-law tort action against his or her employer. *Griffin v. George's, Inc.*, 267 Ark. 91, 589 S.W.2d 24 (1979). In *Griffin*, the appellant employee, Griffin, slipped and became entrapped in an unguarded grain auger. Although the employer was aware of the hazard and recognized the likelihood of injuries to its employees, it "willfully and wantonly disregarded" the known danger and gave appellant a dangerous work assignment that placed him in direct exposure to the auger. *Griffin*, 267 Ark. at 93, 589 S.W.2d at 25. The supreme court acknowledged that willful and wanton

11

negligence is a greater degree of negligence than gross negligence but explained that "in order to avoid the bar of the exclusivity clause, . . . the complaint must be based upon allegations of an intentional or deliberate act by the employer with a desire to bring about the consequences of the act, and not upon allegations of willful and wanton conduct by negligent direction to the employee to use a device known by the employer to be defective or failure to warn the employee of an unsafe condition of which the employer was aware." *Id.* at 96, 589 S.W.2d at 27. By analogy, we hold the same is true here.

Appellant cites *Battle v. Harris*, 298 Ark. 241, 766 S.W.2d 431 (1989), in support of his argument. However, that case does not use the term of art "willful and wanton" conduct and is therefore distinguishable. In *Battle*, the supreme court repeated that it had never interpreted immunity under section 21-9-301 "to include intentional torts committed" and reversed and remanded for further proceedings because appellants' complaint stated a "cause of action for intentional or willful tort." *Id.* at 245, 766 S.W.2d at 433. The supreme court explained that the complaint specifically alleged that appellee had *deliberately and willfully* seized and sold the appellants' properties without just cause and in violation of their due-process rights. *Id.* at 244, 766 S.W.2d at 432.

Those are not the facts of this case. The second amended complaint did not allege deliberate and willful acts. Instead, it alleged "willful and wanton tortious conduct," which our appellate courts have stated sounds in negligence and not an intentional tort. Accordingly, we cannot say that the circuit court erred in finding that appellees were entitled

12

to immunity except to the extent that they may be covered by liability insurance under section 21-9-301.

An affidavit stating that there is no general-liability coverage establishes a prima facie entitlement to summary judgment. *Dayong Yang, supra.* The mayor's affidavit sufficiently established that the City did not possess general-liability insurance at the time of the incident to cover appellant's claims. Moreover, appellant did not meet proof with proof to demonstrate the existence of a genuine issue of material fact on this issue. Therefore, because the City put forth proof that it did not have insurance coverage for the negligence claims alleged by appellant, we hold that appellants are entitled to immunity under section 21-9-301. *See also City of McCrory,* 2022 Ark. App. 200, 644 S.W.3d 823; *Sledge,* 2022 Ark. App. 23.

Because we agree that the circuit court did not err in dismissing the second amended complaint after finding that appellees were immune to appellant's wrongful-death claims as alleged, it is unnecessary for us to address the circuit court's alternative basis for dismissal.

Affirmed.

BROWN, J., agrees.

VIRDEN, J., concurs without opinion.

*King Law Group, PLLC,* by: *W. Whitfield Hyman*; and *Walters, Allison, Parker & Estell,* by: *Derick Allison,* for appellant.

*Sara Monaghan,* for appellees.